IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| **ANNA GILL,** individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>**OT GROWTH PARTNERS, LLC**, a Delaware company, and **ULTIMATE FITNESS GROUP, LLC,** a Florida company,<br><br>*Defendant,* | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

## CLASS ACTION COMPLAINT

Plaintiff Anna Gill ("Plaintiff" or "Plaintiff Gill") brings this Class Action Complaint and Demand for Jury Trial against Defendant OT Growth Partners, LLC ("OT Growth Partners") and Defendant Ultimate Fitness Group, LLC doing business as OrangeTheory Fitness ("OrangeTheory Fitness"), to stop the Defendants from violating the Telephone Consumer Protection Act ("TCPA") by making unsolicited calls and text messages to consumers who registered their phone numbers on the National Do Not Call Registry ("DNC"), and to otherwise obtain injunctive and monetary relief for all persons injured by Defendants' actions. Plaintiff alleges as follows upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

## PARTIES

1. Plaintiff Anna Gill is a resident of Waukesha, Wisconsin.

2. Defendant OT Growth Partners, LLC is a Delaware limited liability company, headquartered at Chapel Hill, North Carolina. Defendant OT Growth Partners conducts business throughout this District, Wisconsin, and the United States.

3. Defendant Ultimate Fitness Group LLC doing business as OrangeTheory Fitness, is a Florida limited liability company, headquartered at Boca Raton, Florida. Defendant OrangeTheory Fitness conducts business throughout this District, Wisconsin, and the United States.

**JURISDICTION AND VENUE**

4. This Court has federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA").

5. This Court has personal jurisdiction over Defendants and venue is proper in this District under 28 U.S.C. § 1391(b) because the wrongful conduct leading to this case was directed to and received by the Plaintiff in this District.

**INTRODUCTION**

6. As the Supreme Court recently explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back." *Barr v. Am. Ass'n of Political Consultants*, No. 19-631, 2020 U.S. LEXIS 3544, at *5 (U.S. July 6, 2020).

7. The National Do Not Call Registry provides for consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).

8. A listing on the DNC "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id*.

9. When Congress enacted the TCPA in 1991, it found that telemarketers called more than 18 million Americans every day. 105 Stat. 2394 at § 2(3).

Class Action Complaint

10. By 2003, due to more powerful autodialing technology, telemarketers were calling 104 million Americans every day. In re Rules and Regulations Implementing the TCPA of 1991, 18 FCC Rcd. 14014, ¶¶ 2, 8 (2003).

11. The problems Congress identified when it enacted the TCPA have only grown exponentially in recent years.

12. Industry data shows that the number of robocalls made each month increased from 831 million in September 2015 to 4.7 billion in December 2018—a 466% increase in three years.

13. According to online robocall tracking service "YouMail," 3.9 billion robocalls were placed in January 2022 alone, at a rate of 126.3 million calls per day. www.robocallindex.com. (Last visited on February 8, 2022)

14. The FCC also has received an increasing number of complaints about unwanted calls, with 150,000 complaints in 2016, 185,000 complaints in 2017, and 232,000 complaints in 2018. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data.

15. "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting off Robocalls* (July 22, 2016), statement of FCC chairman.[1]

16. "The FTC receives more complains about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016).[2]

---

[1] https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls
[2] https://www.ftc.gov/system/files/documents/advocacy_documents/comment-staff-ftc-bureau-consumer-protection-federal-communications-commission-rules-regulations/160616robocallscomment.pdf

## COMMON ALLEGATIONS

17. Defendant OrangeTheory Fitness is a fitness studio with over 1000 franchise locations across the U.S.[3]

18. Defendant OrangeTheory Fitness sells membership plans for its fitness studios to consumers across the U.S. The consumers who purchase Defendant OrangeTheory Fitness' membership at any one franchise location get nationwide studio access including access to other franchise locations of the Defendant.[4]

19. Defendant OT Growth Partners is one of the "largest independently owned and operated OrangeTheory Fitness Franchise[s]."[5]

20. Defendant OT Growth Partners is an Area Representative for Defendant OrangeTheory Fitness for multiple states, and they own and operate more than 50 of Defendant OrangeTheory Fitness' fitness studios, including in Wisconsin. Defendant OT Growth Partners "is a leading franchisee platform in the OrangeTheory Fitness ecosystem."[6]

21. Defendant OrangeTheory Fitness conducts cold calling marketing campaigns for the benefit of itself and its franchisees in violation of the TCPA. OrangeTheory Fitness admits to using the latest technology to solicit prospective consumers across the U.S. to purchase membership plans from the Defendants' franchise nearest to the consumer, including the OrangeTheory Fitness studios owned and operated by Defendant OT Growth Partners like the one in Brookfield:

> "To get people in, we've mostly invested in hyperlocal social lead generation ads targeting affluent women living within three to five miles of each studio to gain a studio member base," Keith explained.[7]

---

[3] https://www.linkedin.com/company/orangetheory-fitness/about/
[4] https://www.orangetheory.com/en-us/memberships/
[5] https://www.linkedin.com/jobs/view/fitness-sales-associate-at-orangetheory-fitness-2905494612/
[6] https://otgrowthpartners.com/partnerships/
[7] https://www.adweek.com/brand-marketing/hyperlocal-targeting-and-ai-have-made-orangetheory-fitness-a-nearly-1-billion-business/

> Who's completed more Orangetheory Fitness pre-sale marketing campaigns than SocialPhDs? Nobody! SocialPhDs was presented with the opportunity to create a turnkey presales solution for Orangetheory's presales phase. The solution must meet two objectives:
>
> 1. Generate volumes of qualified leads that convert to sales
>
> 2. Have all the components be automated to allow franchisees to solely focus on converting leads, studio build out and preparing for opening. [8]

22. Defendant OrangeTheory Fitness spends millions of dollars on developing and using AI based technology to generate leads of potential consumers according to the statements made to the media by Kevin Keith[9], the Chief Brand Officer for Defendant OrangeTheory Fitness:

> Orangetheory has grown to 600,000 members at almost 1,000 gyms across 16 countries, according to Keith. "We open a studio just about every day, so generation of high-quality digital leads helps get our studios a solid member base quickly as they open," said Keith. "After they open, lead gen remains important to sustain membership count levels." [10]

> The gym's media budget proves its trust in AI. In 2018, Orangetheory is spending upward of $15 million on media using its AI platform. This amount is part of a total media budget of $18 million, which is three times what Orangetheory spent last year, according to Keith, who along with bumping up the company's media spend has increased the gym's in-house marketing team from three to 17 people, proving AI doesn't necessarily mean that fewer jobs are needed. [11]

23. Defendant OrangeTheory Fitness hires employees for cold calling and telemarketing to benefit itself and its franchisees like Defendant OT Growth Partners. Many of OrangeTheory Fitness' employees have posted reviews online about OrangeTheory Fitness instructing them to cold call as part of their lead generation work, including:

---

[8] https://www.socialphds.com/case-study-1.html
[9] https://www.linkedin.com/in/kevinkeith1/
[10] https://digiday.com/marketing/high-end-gym-chain-orangetheory-cut-cost-per-lead-half-using-artificial-intelligence/
[11] https://digiday.com/marketing/high-end-gym-chain-orangetheory-cut-cost-per-lead-half-using-artificial-intelligence/

4
Class Action Complaint

- > **Run Away**
  > Sales Associate (Former Employee) - Santa Fe, NM - July 26, 2019
  >
  > Management is terrible with communication— constant gossip and backhanded comments. <u>Required to constantly call customers</u> even when you're scheduled for the start of the day and yes, <u>they expect you to call customers no matter what</u>. Boring and easy job. Owners are greedy and you will work off the clock and not get paid. Low pay for the cost of living and no benefits. Run away.[12]

- > **Don't.**
  > Sales Associate (Former Employee) - Portland, OR - February 23, 2020
  >
  > Working at Orangetheory was unpleasant and uninspiring. The environment was not inclusive and the LLC that runs the locations in NW Oregon and SW Washington doesn't care about its employees. My manager at the time was not afforded appropriate FMLA leave and was not treated fairly while pregnant. The only goals were to sell, even if it meant <u>calling 100+ ex members a day and harassing them in an effort to get them to come back.</u> Pay was not fair, I never got a lunch, and when I raised issues about a racist employee, nothing was done. Just go somewhere else that will actually value you.[13]

- > **High Expectations but Low Pay**
  > Sales Associate (Former Employee) - Mt. Juliet, TN - May 8, 2021
  >
  > They didn't pay me a fair wage and I felt I deserved making a few dollars more than what they were paying me for what is basically an entry-level sales job. If you're working as a sales associate you will be <u>making phone calls to people who you've called 90+ times already</u> with no avail and it's very boring and degrading work.[14]

- > **Horrible Compensation**
  > Sales Associate (Former Employee) - SF Bay Area - November 21, 2016
  >
  > Fun atmosphere if you join a team where the Coaches and Sales Associates have built a tight bond. The workouts are amazing, and you get a free membership which is a great perk, however compensation and bonus structures are not worth the amount of effort you are required to put in. As a sales associate, you are essentially front desk in charge of check-in, customer service, answering incoming calls, as well as a sales associated <u>expected to produce 40+ outgoing calls a day.</u> High turnover, as people realize that they are expected to do way too much for way too little.[15]

---

[12] https://www.indeed.com/cmp/Orangetheory-Fitness/reviews?fcountry=US&sort=rating_asc
[13] *Id.*
[14] *Id.*
[15] *Id.*

> **They set you up for failure and never help you learn and improve**
>
> Sales Associate (Former Employee) - Albuquerque, NM - January 27, 2022
>
> They set you up for Failure. Worked there for two weeks never got really trained just handed a phone and told to call these people, and never was shown how to do things on the computer. They expect you to learn and remember people names instantly. Youll see like over 200 people a day. Your expected to call peoople who haven't shown interest in months and leave voice mail after voice mail and never make a sale unless someone walks through the door. And when they do the other coworkers or managers will take thay client from you and take the commission from you. And if you don't make sales then blame it on you and you get punished when the people you are signed to call don't answer. When you start you never get a chance to prove yourself or make improvements because if you fail once your done and then never give you an explanation why. Like how can you expect to make an impact make sales, learn how to talk to people get the chance to remember people, open yourself up and make conversations if your not given the chance and the management gets mad when you fail at an opportunity you were never given or able to prove and show.
>
> ✓ **Pros**
> Just flexible hours.
>
> ✗ **Cons**
> Again they set you up to fail, never help or teach you how to do things, they just throw you a phone tell you to log on and make calls and sales never how to do all of it.[16]

> **OK for part time gig.**
>
> Sales Associate (Current Employee) - Austin, TX - December 7, 2017
>
> You are quickly thrown in and expected to do/know things from a quick day of training which would be a 3 hour shift with the studio manager. Supposed to make 40+ calls a day, and get 10 leads per day. Go out and market, harassing people out in a public setting into a intro class. ext.
>
> ✓ **Pros**
> Free workout, members
>
> ✗ **Cons**
> Commission rates, marketing, 40+ phone calls per day. 10 leads per day.[17]

---

[16] https://www.indeed.com/cmp/Orangetheory-Fitness/reviews?fcountry=US&sort=rating_asc
[17] *Id.*

6
Case 2:22-cv-00192-BHL   Filed 02/16/22   Page 7 of 14   Document 1
Class Action Complaint

> **Terrible pay, terrible management and horrible work environment/ Las Vegas, NV**
>
> Member Consultant (Former Employee) - Las Vegas, NV - December 8, 2020
>
> Free workouts seemed worth the stress of constant hard selling and cold calling. You don't get breaks, only long enough to eat while standing up and you feel bad about even doing that. Management is terrible and unorganized, changing protocols in a whim and leaving all the backlash to the front desk MC's. The pay is not worth the amount of stress and work they expect, when they don't train employees at all. They forget the amount of work that goes into everything so training is a nightmare and all over the place. The management and staff talk about members and other staff behind their back. Do not work here, the commission is not worth their unreal pay and expectations. [18]

24. Other consumers have also posted complaints online about receiving unsolicited calls and text messages from the Defendants, including a consumer who was contacted by the Defendants long after ceasing their membership with the Defendants just like in the case of Plaintiff Gill:

> 03/04/2020
>
> I have asked to be removed from all contact lists multiple times and they continue to contact me, asking me to restart my membership. They have emailed me and called my multiple times since I canceled my membership 1.5 years ago. Today, I received an email again. [19]

### PLAINTIFF GILL'S ALLEGATIONS

25. Plaintiff Gill registered her phone number on the DNC on April 27, 2010.

26. Plaintiff Gill's phone number is not associated with a business and is used for personal use only.

27. Plaintiff Gill was a member of Defendant OrangeTheory Fitness' fitness studio at the franchise owned by Defendant OT Growth Partners at Brookfield, WI. Plaintiff Gill ceased to be a member and terminated her business relationship with both the Defendants in 2018. Plaintiff Gill has not had any business relation with either of the Defendants since then, has not made any request or inquiry of the Defendants, and has not given her consent to the Defendants to contact her.

---

[18] https://www.indeed.com/cmp/Orangetheory-Fitness/reviews?fcountry=US&sort=rating_asc
[19] https://www.bbb.org/us/fl/boca-raton/profile/fitness-center/orangetheory-fitness-0633-90123059/complaints

28. On January 6, 2022, at 4:49 PM, Plaintiff received a series of text messages from the phone number 262-299-7339 to her cell phone, soliciting Plaintiff Gill to rejoin Defendant OrangeTheory Fitness' membership program to avail the facilities at Defendant OT Growth Partners' fitness studio at Brookfield, WI.



29. On January 13, 2022, at 3:28 PM, Plaintiff received another series of text messages from the same phone number, 262-299-7339, to her cell phone, soliciting Plaintiff Gill to rejoin Defendant OrangeTheory Fitness' membership program to avail the facilities at Defendant OT Growth Partners' fitness studio at Brookfield, WI.

30. Annoyed by the unsolicited text messages, Plaintiff Gill responded "STOP", to get the Defendants to stop sending unwanted solicitation text messages to her cell phone.

8
Class Action Complaint



31. Defendants' text messages constitute telemarketing because they promoted membership at Defendants' fitness facilities. Plaintiff Gill used to be a member of Defendant OT Growth Partners' fitness studio at Brookfield, WI whose membership plan was being offered to the Plaintiff via these text messages. Defendant OrangeTheory Fitness also stands to gain as their franchise fees are predicated on their franchisee's commercial success.

32. The solicitation text messages that Plaintiff received from or on behalf of the Defendants have harmed Plaintiff Gill in the form of annoyance, nuisance, and invasion of privacy, and disturbed the use and enjoyment of her phone, in addition to the wear and tear on the phone's hardware (including the phone's battery) and the consumption of memory on the phone, aggravation, intrusion on seclusion, trespass, and conversion. Defendants' text message also inconvenienced Plaintiff and caused disruption to her daily life.

33. Seeking redress for these injuries, Plaintiff Gill, on behalf of herself and a Class of similarly situated individuals, bring suit under the TCPA.

**CLASS ALLEGATIONS**

34. Plaintiff Gill brings this action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) and seek certification of the following Class:

> **Do Not Call Registry Class:** All persons in the United States who from four years prior to the filing of this action through trial (1) either of the Defendants, or an agent on behalf of Defendants, sent more than one text message, (2) within any 12-month period, (3) where the person's telephone number had been listed on the National Do Not Call Registry for at least thirty days, (4) for substantially the same reason the Defendants texted Plaintiff.

35. The following individuals are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendants, their subsidiaries, parents, successors, predecessors, and any entity in which either Defendants or their parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Class; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against the Defendants have been fully and finally adjudicated and/or released. Plaintiff Gill anticipates the need to amend the Class definition following appropriate discovery.

36. **Typicality and Numerosity**: Plaintiff is a member of the Class who received text messages as part of the same telemarketing campaign as other Class members, and on information and belief, there are hundreds, if not thousands of members of the Class such that joinder of all members is impracticable.

37. **Commonality and Predominance**: There are many questions of law and fact common to the claims of the Plaintiff and the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

(a) whether Defendants' conduct violated the TCPA;

(b) whether members of the Class are entitled to treble damages based on the willfulness of Defendants' conduct.

10

Class Action Complaint

(c) whether Defendant OTGF should be vicariously liable for the telemarketing text messages sent to the Plaintiff.

38. **Adequate Representation**: Plaintiff Gill will fairly and adequately represent and protect the interests of the Class, and has retained counsel competent and experienced in class actions. Plaintiff Gill has no interests antagonistic to those of the Class, and Defendants have no defenses unique to Plaintiff. Plaintiff Gill and her counsel are committed to vigorously prosecuting this action on behalf of the members of the Class, and have the financial resources to do so. Neither Plaintiff Gill nor her counsel have any interest adverse to the Class.

39. **Appropriateness**: This class action is also appropriate for certification because the Defendants have acted or refused to act on grounds generally applicable to the Class and as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class and making final class-wide injunctive relief appropriate. Defendants' business practices apply to and affect the members of the Class uniformly, and Plaintiff's challenge of those practices hinges on Defendants' conduct with respect to the Class as wholes, not on facts or law applicable only to Plaintiff Gill. Additionally, the damages suffered by individual members of the Class will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' actions. Thus, it would be virtually impossible for the members of the Class to obtain effective relief from Defendants' misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

**FIRST CLAIM FOR RELIEF**
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Gill and the Do Not Call Registry Class)**

40. Plaintiff repeats and realleges paragraphs 1 through 39 of this Complaint and incorporates them by reference herein.

41. The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered her or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

42. Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c).

43. Defendants violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff and the Do Not Call Registry Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

44. Defendants violated 47 U.S.C. § 227(c)(5) because Plaintiff and the Do Not Call Registry Class received more than one telephone text message in a 12-month period made by or on behalf of the Defendant in violation of 47 C.F.R. § 64.1200, as described above.

45. As a result of Defendants' conduct as alleged herein, Plaintiff and the Do Not Call Registry Class suffered actual damages and, under section 47 U.S.C. § 227(c), are entitled, inter alia, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

46. To the extent Defendants' misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Do Not Call Registry Class.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff Gill individually and on behalf of the Class, prays for the following relief:

a. An order certifying this case as a class action on behalf of the Class as defined above; appointing Plaintiff Gill as the representative of the Class; and appointing her attorneys as Class Counsel;

b. An award of actual and/or statutory damages and costs;

c. An order declaring that Defendants' actions, as set out above, violate the TCPA;

d. An injunction requiring the Defendant to cease all unsolicited calling activity, and to otherwise protect the interests of the Class; and

e. Such further and other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff Gill requests a jury trial.

DATED this 15th day of February, 2022.

    **ANNA GILL**, individually and on behalf of all others similarly situated,

*/s/ Stefan Coleman*
Stefan Coleman (FL Bar no. 30188)
law@stefancoleman.com
COLEMAN PLLC
66 Flagler Street, Suite 900
Miami, FL 33130
Telephone: (877) 333-9427
Facsimile: (888) 498-8946

Avi R. Kaufman (FL Bar no. 84382)
kaufman@kaufmanpa.com
KAUFMAN P.A.
237 South Dixie Highway, Floor 4
Coral Gables, FL 33133
Telephone: (305) 469-5881

*Counsel for Plaintiff and the putative Class*